## Farmers & Breeders Mutual Reserve Fund Live Stock Ins. Co. *v.* Curran, Appellant.

*Insurance—Mutual insurance—Set-off—Premiums—Act of April 20, 1911, P. L. 70.*

Where a person admits the issuance and delivery to and receipt by him of a policy of insurance of a mutual insurance company, wherein he agrees to pay without notice a stated premium quarterly, until the expiration of the term, or the prior cancellation of the policy, and further admits the nonpayment of such premiums, and produces the uncancelled policy at the trial, and alleges as a sole ground of defense, a default by company, in paying losses thereunder, and the evidence is undisputed that the company had deducted the loss from the premiums due and was not in default, the company is entitled to binding instructions for the balance of premiums due, and upon submission of case to and disagreement of jury, to judgment upon the whole record, under Act of April 20, 1911, P. L. 70.

Argued Oct. 18, 1916. Appeal, No. 78, Oct. T., 1916, by defendant, from judgment of C. P. No. 2, Philadelphia Co., June T., 1915, No. 3239, for plaintiff upon the whole record in case of Farmers & Breeders Mutual Reserve Fund Live Stock Insurance Company of the United States v. Frank Curran. Before ORLADY, P. J., PORTER,

HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS,
JJ. Affirmed.

Assumpsit upon a policy of live stock insurance. Before WESSEL, J.

The court charged in part as follows:

The plaintiff, the Farmers and Breeders Mutual Reserve Fund Live Stock Insurance Company of the United States, claims to recover in this action at your hands from Frank Curran the sum of $691.71 with interest from August 27, 1914, and it claims it is entitled to receive that amount by reason of the failure of the defendant to pay certain quarterly installments of premium, alleged to be owing by the defendant to the plaintiff. It appears that by reason of certain representations that were made by the defendant, the insurance company on the 27th day of August, 1913, issued its policy of insurance, by which it stipulated that in consideration of the payment of $322.-50 quarterly by the insured, it would insure and did insure Frank Curran against loss as therein stipulated, for the term of one year from 27th day of August, 1913, at 12 o'clock noon to the 27th day of August, 1914, at 12 o'clock noon. This policy was accepted by the defendant, and retained by him up to the day of trial, and at that time produced by him upon the plaintiff's call. Under that policy the defendant became liable to pay the plaintiff the four several premiums of $322.50 each as therein stipulated, such payments to be made quarterly during the term for which the policy was issued, to wit, for the term of one year.

The defendant paid the first premium which was due August 27, 1913, amounting to $322.50, and admits that he has not paid the three quarterly premiums of $322.50 each during the term of said policy, and which according to the policy were due and payable on the 27th day of the months of November, 1913, and February and May, 1914. It appears that the defendant, while the said policy was in force and effect, suffered three losses covered by the

policy. On September, 8, 1913, a sorrel horse, the subject of this insurance, died. The loss was reported by the defendant to the plaintiff on September 9, 1913, and on the 25th day of September, 1913, the defendant filed his proof of loss, upon which loss, under the terms of the policy, he became entitled at a then subsequent date to have and receive from the plaintiff the sum of $75. On October 11, 1913, a gray horse covered by this policy died. Notice of its death was given by the defendant to the plaintiff on October 13, 1913, and on December 4, 1913, proofs of loss were filed with the plaintiff by the defendant, and under the terms of the policy the defendant was entitled at a then subsequent date to a further payment of the insured loss of $75. On November 3, 1913, a gray horse, the subject of insurance by this policy, died. The loss was reported by the defendant to the plaintiff on November 6, 1913, and on December 4, 1913, the defendant filed with the plaintiff his proof of loss covering this horse, and the defendant was therefore entitled by reason of this loss, at a then subsequent date to a further payment of the further sum of $150.

Condition 6 of the policy provides: "All proofs must be made and forwarded to the company within sixty days after loss, and no action at law or suit in equity for the recovery of any claim arising hereunder shall be brought within ninety days from the time when the company shall have passed upon and approved such claim, nor at any time after the lapse of one year from the date of the death." These several losses therefore, aggregating $300, were not recoverable by the defendant from the plaintiff until ninety days from the time when the company shall have passed upon and approved the several claims. Of course, such approval must, under the contract of insurance, be at a date not later than sixty days after satisfactory proofs of loss have been filed with the company at its home office.

The policy of insurance is what is known as a blanket policy, covering not to exceed 120 horses of an insurance

value of not exceeding $150 on any one animal. It was issued under the agreement and understanding $2.69 was to be paid quarterly in advance for each animal owned by the defendant in excess of 122 head. It was conceded by counsel that the policy continuously covered 122 head of horses, and the company has therefore added to its claim the sum of $24.21 for the premium upon the three horses which were covered by the policy, and which horses took the place, so far as insurance under this policy is concerned, of the three horses which died during the lifetime of the policy, or during the time the policy was effective. Notice of the due dates of the several premiums was sent by the plaintiff to the defendant, in accordance with the terms of the policy, but the defendant has failed to pay any quarterly premium other than the first above mentioned.

To briefly recapitulate, therefore, the plaintiff's contention and claim is as follows: Four quarterly premiums of $322.50 each, due respectively on the 27th day of August and November, 1913, and February and May, 1914, amounting to $1,290. You add to that the premiums coming to the company by reason of the substitution of other horses in place of the three horses which had died, or $24.21, which makes a total of $1,314.21. They are allowing the defendant credit for the amount paid by him of $322.50, and the amount to which he is entitled by reason of the loss to which I have already referred, of $300, which makes a total credit of $622.50, and leaves a balance which they claim of $691.71, with interest from the 27th of August, 1914.

The defendant claims that he is not obliged to pay this amount, or any other amount, but on the contrary that he should have paid to him the sum of $322.50 with interest from August 27, 1913, because having sustained the losses to which reference has been made, and having filed his proofs of loss, and the plaintiff company having failed to pay him the amount of such several losses, that therefore the plaintiff violated the terms of its policy of insur-

356 FARMERS & B.M.R.F.L.S. INS. CO. *v.* CURRAN, Appel.

Assignment of Error—Opinion of the Court. [65 Pa. Superior Ct.

ance and is not entitled to recover. I cannot affirm that as a proposition of law.

The jury disagreed and judgment was entered for plaintiff on the whole record.

*Error assigned* was in entering judgment for plaintiff on the whole record.

*Henry A. Hoefler,* with him *George S. Russell,* for appellant.—The Act of April 20, 1911, P. L. 70, contemplates the entry of judgment, upon the disagreement of a jury, when binding instructions should have been given in favor of either party. If any question of fact arises for the determination of the jury, binding instructions cannot be given, and it is out of the power of the court to enter judgment on the whole record: Lipsky v. Stolzer, 236 Pa. 154.

*W. W. Mentzinger, Jr.,* with him *J. Howard Patterson,* for appellee.

OPINION BY KEPHART, J., December 18, 1916:

The jury that heard this case disagreed and were discharged. The plaintiff having submitted a point for binding direction, moved the court for judgment in its favor in accordance with the Act of April 20, 1911, P. L. 70. If there were any question which from the defendant's evidence the jury should pass upon, this motion should have been refused. The action was instituted to recover certain insurance premiums. The interpretation of the policy of insurance being a contract on which the claim was predicated was for the trial judge. This policy did not require a formal notice to be sent to the insured of the premiums due as a condition precedent to the right to claim or sue for them. The policy created an absolute obligation on the part of the defendant to pay. The provision as to notice referred to the effect of such notice and the effect of the affidavit of the secretary in any action or

proceeding for the premium, but by the pleadings the question of notice was not in issue. The plaintiff's oral testimony as to notice was needlessly introduced, and its right to recover was not dependent thereon. The defendant claimed the insurance value of three horses. Proof of loss was duly made to the company. The date of the approval of these losses was immaterial as the plaintiff acknowledged its liability and credited the defendant with the amount of such losses on premiums due. This premium was due before any claim could be made under the policies for loss and the company had a perfect right to deduct the amount of the loss from money owed by the defendant. The question of cancellation was not raised by the pleadings. Had it been, the defendant would have been required to comply with the terms of the policy by paying the premiums due: Farmers & Breeders, Etc., Live Stock Insurance Co. v. Derr, 59 Pa. Superior Ct. 600. When the cancellation was made the premium of November 27th was then due. We do not feel at liberty to discuss the character of the policy of insurance generally. It may be there are certain parts of it that are against public policy, but this record does not raise any questions with respect to these clauses.

The judgment is affirmed.